1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10  LEAH GOODMAN,

                                                CASE NO. 11cv5373-JRC
11                     Plaintiff,

                                                ORDER ON PLAINTIFFS
12         v.                                   COMPLAINT

13  MICHAEL J. ASTRUE, Commissioner of
    the Social Security Administration,
14
                       Defendant.
15

16         This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local

17  Magistrate Judge Rule MJR 13. (See also Notice of Initial Assignment to a U.S. Magistrate

18  Judge and Consent Form, ECF No. 3; Consent to Proceed Before a United States Magistrate

19  Judge, ECF No. 6). This matter has been fully briefed. (See ECF Nos. 12, 13, 14)

20         After considering and reviewing the record, the undersigned finds that the ALJ here

21  failed to evaluate properly the medical evidence. He also committed legal error in the assessment

22  of plaintiffs credibility. For these reasons, this matter should be reversed and remanded pursuant

23

24

1    to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative

2    proceedings.

3                                          BACKGROUND

4          Plaintiff, LEAH GOODMAN, was born in 1963 and was forty-three years old on her

5    alleged onset date of August 1, 2007 (Tr. 95, 130). Plaintiff worked as an office assistant for

6    Boeing Aircraft from 1985 until August, 2007 (Tr. 130-31). At that time, plaintiff alleged that

7    her ability to work was compromised by her depression, fibromyalgia and anxiety (Tr. 130). She

8    contended that "the pain got really bad," and she became unable to sit, stand or walk for any length

9    of time (Tr. 47, 130). She also started missing more days of work, "at least a day every couple

10   weeks or more" (Tr. 47).

11                                     PROCEDURAL HISTORY

12         Plaintiff filed an application for Social Security disability benefits in January, 2008 (Tr.

13   95-99). Her application was denied initially and following reconsideration (Tr. 58-59). Her

14   requested hearing was held before Administrative Law Judge M.J. Adams ("the ALJ") on March 1,

15   2010 (Tr. 30-57). On April 8, 2010, the ALJ issued a written decision in which he concluded that

16   plaintiff was not disabled pursuant to the Social Security Act (Tr. 9-24).

17         On March 23, 2011, the Appeals Council denied plaintiff's request for review, making the

18   written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-3). See 20

19   C.F.R. § 404.981. On May 15, 2011, plaintiff filed a complaint in this Court seeking judicial

20   review of the ALJ's written decision (see ECF No. 1). Plaintiff challenges the ALJ's review of the

21   medical evidence, the lay evidence and his review of plaintiff's credibility (see id.).

22

23

24

1

STANDARD OF REVIEW

2     Plaintiff bears the burden of proving disability within the meaning of the Social Security

3 Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also

4 Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability

5 to engage in any substantial gainful activity" due to a physical or mental impairment "which can be

6 expected to result in death or which has lasted, or can be expected to last for a continuous period

7 of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled

8 under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do

9 previous work, and cannot, considering the plaintiff's age, education, and work experience,

10 engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§

11 423(d)(2)(A), 1382c(a)(3)(B); see also  Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir.

12 1999).

13     Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

14 social security benefits if the ALJ's findings are based on legal error or not supported by

15 substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th

16 Cir. 2005) (citing Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is

17 more than a scintilla, less than a preponderance, and is such "relevant evidence as a reasonable

18 mind might accept as adequate to support a conclusion." Magallanes v. Bowen, 881 F.2d 747, 750

19 (9th Cir. 1989) (quoting Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also

20 Richardson v. Perales, 402 U.S. 389, 401 (1971). The Court "must independently determine

21 whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial

22 evidence." See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (citing Moore v. Comm'r of

23

24

1  the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279

2  (9th Cir. 1996).

3       According to the Ninth Circuit, "[l]ong-standing principles of administrative law require

4  us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - -

5  not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."

6  Bray v. Comm'r of SSA, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* SEC v. Chenery Corp.,

7  332 U.S. 194, 196 (1947) (other citation omitted)); see also Stout v. Commissioner of Soc. Sec.,

8  454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground

9  that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ,

10 not the district court, is required to provide specific reasons for rejecting lay testimony." Stout,

11 supra, 454 F.3d at 1054 (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). In the

12 context of social security appeals, legal errors committed by the ALJ may be considered

13 harmless where the error is irrelevant to the ultimate disability conclusion. Stout, supra, 454 F.3d

14 at 1054-55 (reviewing legal errors found to be harmless).

15                                   DISCUSSION

16

17      1.  The ALJ failed to evaluate properly the medical evidence.

18      "A treating physician's medical opinion as to the nature and severity of an individual's

19 impairment must be given controlling weight if that opinion is well-supported and not

20 inconsistent with the other substantial evidence in the case record." Edlund v. Massanari, 2001

21 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* SSR 96-

22 2p, 1996 SSR LEXIS 9); see also 20 C.F.R. § 416.902 (non-treating physician is one without

23 "ongoing treatment relationship"). The decision must "contain specific reasons for the weight given

24 to the treating source's medical opinion, supported by the evidence in the case record, and must

1    be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator

2    gave to the [] opinion." SSR 96-2p, 1996 SSR LEXIS 9. However, "[t]he ALJ may disregard the

3    treating physician's opinion whether or not that opinion is contradicted." Batson v. Commissioner

4    of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (quoting Magallanes v.

5    Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

6            The ALJ must provide "clear and convincing" reasons for rejecting the un-contradicted

7    opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d

8    821, 830 (9th Cir. 1995) (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v.

9    Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion

10   is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are

11   supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31 (citing

12   Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting

13   out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

14   interpretation thereof, and making findings." Reddick, supra, 157 F.3d at 725 (citing Magallanes

15   v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

16           In addition, the ALJ must explain why his own interpretations, rather than those of the

17   doctors, are correct. Reddick, supra, 157 F.3d at 725 (citing Embrey v. Bowen, 849 F.2d 418,

18   421-22 (9th Cir. 1988)). However, the ALJ "need not discuss all evidence presented." Vincent on

19   Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam).  The ALJ

20   must only explain why "significant probative evidence has been rejected." Id. (quoting Cotter v.

21   Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

22           In general, more weight is given to a treating medical source's opinion than to the

23   opinions of those who do not treat the claimant.  Lester, supra, 81 F.3d at 830 (citing Winans v.

24

1  <u>Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987)).  On the other hand, an ALJ need not accept the

2  opinion of a treating physician, if that opinion is brief, conclusory and inadequately supported by

3  clinical findings or by the record as a whole. <u>Batson v. Commissioner of Social Security</u>

4  <u>Administration</u>, 359 F.3d 1190, 1195 (9th Cir. 2004) (*citing* <u>Tonapetyan v. Halter</u>, 242 F.3d

5  1144, 1149 (9th Cir. 2001)); <u>see also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002).  An

6  examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining

7  physician." <u>Lester</u>, <u>supra</u>, 81 F.3d at 830 (citations omitted); <u>see also</u> 20 C.F.R. § 404.1527(d). "In

8  order to discount the opinion of an examining physician in favor of the opinion of a

9  nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are

10  supported by substantial evidence in the record." <u>Van Nguyen v. Chater</u>, 100 F.3d 1462, 1466 (9th

11  Cir. 1996) (*citing* <u>Lester</u>, <u>supra</u>, 81 F.3d at 831).

12       According to Social Security Ruling ("SSR") 96-8p, a residual functional assessment by the

13  ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts

14  with an opinion from a medical source, the adjudicator must explain why the opinion was not

15  adopted." SSR 96-8p, 1996 SSR LEXIS 5 at *20.

16       a.  Dr. Jason R. Savoldi, D.O. ("Dr. Savoldi")

17       Dr. Savoldi began treating plaintiff on August 6, 2009 (<u>see</u> Tr. 504). He diagnosed

18  plaintiff with fibromyalgia syndrome with chronic fatigue syndrome and depression (<u>id.</u>). Dr.

19  Savoldi repeated his diagnosis of fibromyalgia following a physical examination on August 13,

20  2009; August 25, 2009; September 2, 2009; September 18, 2002; October 8, 2009; October 30,

21  2009; November 17, 2009; and December 9, 2009 (Tr. 505-10).

22       On February 16, 2010, Dr. Savoldi provided an assessment of plaintiff's physical and

23  mental limitations based on her medical diagnoses (<u>see</u> Tr. 795-96). He opined that plaintiff's

24

1   'major limitations' resulted from her fibromyalgia syndrome (Tr. 795). Dr. Savoldi opined

2   specifically that prolonged 'standing, prolonged sitting, lifting or carrying heavy objects or

3   handling objects on a frequent routine or repetitive manner is extremely difficult for' plaintiff to

4   handle (id.).

5          Regarding mental limitations, Dr. Savoldi indicated that fibromyalgia affects mentation,

6   and specifically opined that plaintiff was 'somewhat intolerant of stress and maintaining

7   concentration, pace and persistence, and being able to adapt to change' (id.). He also opined that

8   plaintiff was 'also slightly impaired because her chronic pain management requires narcotic pain

9   medicine and muscle relaxers to control her pain syndrome' (id.). He also assessed that plaintiff

10  was not able to get complete relief without these medications and had 'consulted multiple

11  specialists to confirm the need for these medicines' (id.). Dr. Savoldi concluded that plaintiff did

12  not have any drug-seeking tendencies and was not malingering (id.).

13         In his written decision, the ALJ discounted Dr. Savoldi's opinions (see Tr. 21-22). The

14  ALJ gave only partial weight to Dr. Savoldi's opinions because Dr. Savoldi 'did not specify the

15  degrees of the claimant's limitations' (Tr. 22). This is not a legitimate reason to discount the

16  limitations Dr. Savoldi specified. For example, Dr. Savoldi opined specifically that prolonged

17  'standing, prolonged sitting, lifting or carrying heavy objects or handling objects on a frequent

18  routine or repetitive manner is extremely difficult for' plaintiff to handle (Tr. 795). Dr. Savoldi's

19  opinion that these activities were 'extremely difficult' for plaintiff to handle is sufficiently specific

20  to determine that Dr. Savoldi's opinion is contradicted by the ALJ's determination that plaintiff

21  could 'stand and/or walk with normal breaks for a total of about six hours in an eight hour

22  workday' (Tr. 18).

23

24

1    Furthermore, an ALJ has a duty to develop the record if it is ambiguous.  Therefore, if the

2    ALJ thought that Dr. Savoldi's opinions regarding plaintiff's limitations were ambiguous, he

3    should have sought more information from Dr. Savoldi.  See Tonapetyan v. Halter, 242 F.3d

4    1144, 1150 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)).

5    Before the ALJ made a determination regarding plaintiff's residual functional capacity that

6    appears to contradict a treating doctor's opinion, he should have sought more information from

7    this treating doctor, Dr. Savoldi.  See Tonapetyan, supra, 242 F.3d at 1150.

8    The ALJ also found that Dr. Savoldi's "statements that the claimant's symptoms required

9    narcotic pain medication are contra to her other fibromyalgia regimen of weight control and

10   exercise, as well as records showing that the claimant's fibromyalgia symptoms improved with

11   exercise" (Tr. 22). First, the fact that exercise may improve plaintiff's symptoms does not negate

12   necessarily a finding that her symptoms required narcotic pain medication. The ALJ did not cite

13   a doctor's opinion that exercise and weight control completely controlled plaintiff's symptoms to

14   the extent that she no longer required narcotic pain medication (see id.).

15   The Court also notes that Dr. Savoldi specifically indicated that plaintiff was not able to

16   get complete relief without these medications and that she had "consulted multiple specialists to

17   confirm the need for these medicines" (Tr. 795). These assessments by Dr. Savoldi are supported

18   by his treatment records, including the notation that Dr. Savoldi called plaintiff's previous

19   treating physician, Dr. Beer, who confirmed that plaintiff was on Percocet and confirmed that

20   plaintiff "had been trialed on multiple different medicines" (Tr. 504; see also Tr. 506 ("her pain is

21   just not completely controlled")). The Court also notes that plaintiff testified that she couldn't do

22   some of the exercises that she attempted because they aggravated her pain (see Tr. 49).The ALJ's

23   contrary implication is not supported by substantial evidence in the record as a whole. The ALJ

24

1  gave no other reasons to support his discounting of the specific functional assessments provided

2  by Dr. Savoldi. For the reasons stated and based on a review of the relevant record, the Court

3  concludes that the ALJ failed to evaluate properly the opinions of Dr. Savoldi and did not

4  provide legitimate reasons supported by substantial evidence in the record to discount Dr.

5  Savoldi opinions.  See Lester, supra, 81 F.3d at 830-31. Therefore, the ALJ's decision should be

6  set aside and this matter should be reversed and remanded to the Commissioner for further

7  consideration. Bayliss, supra, 427 F.3d at 1214 n.1.

8        b.   Dr. Susan Woyna, M.D. ("Dr. Woyna"), examining physician

9        Dr. Woyna examined plaintiff on April 5, 2008 (see Tr. 431-35). Dr. Woyna, psychiatrist,

10  reviewed some of plaintiff's records and performed a comprehensive psychiatric evaluation,

11  including a mental status examination (id.). Dr. Woyna assessed that plaintiff was "mildly

12  psychomotor retarded" (Tr. 432). Although plaintiff was able to recall 3 out of 3 items

13  immediately, she was able to recall only 1 out of 3 after a six-minute delay (Tr.433). She could

14  not recall the words "even with hints" (id.).

15        Dr. Woyna diagnosed plaintiff with major depressive disorder, recurrent; panic disorder

16  with agoraphobia; breathing-related sleep disorder; and, fibromyalgia, among other diagnoses

17  (Tr. 434). Dr. Woyna assessed that plaintiff "did poorly on both memory and concentration

18  testing," and opined that plaintiff likely would "have difficulty performing detailed or complex

19  tasks" (id.). Dr. Woyna also opined that plaintiff likely had the ability to accept instruction from a

20  supervisor in a work setting, but would experience "a low degree of persistence with difficult

21  tasks" (id.). Dr. Woyna also assessed that plaintiff's behavior at the examination "was indicative of

22  considerable fatigue throughout the interview" (Tr. 434-35). Dr. Woyna opined that this suggested

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 9

1  that plaintiff "might not be able to interact appropriately with co-workers and the public in a work

2  setting" (Tr. 435).

3        The ALJ did not credit fully the opinions of psychiatrist Dr. Woyna because the ALJ

4  concluded that the "objective evidence discussed above and the claimant's own reports of her

5  activities show that she is less limited than determined by Dr. Woyna" (Tr. 21). These reasons are

6  neither specific, nor legitimate, and do not support the ALJ's decision to fail to credit fully the

7  opinions by examining psychiatrist, Dr. Woyna. See Lester, supra, 81 F.3d at 830-31.

8        In addition, the Court notes that "experienced clinicians attend to detail and subtlety in

9  behavior, such as the affect accompanying thought or ideas, the significance of gesture or

10  mannerism, and the unspoken message of conversation. The Mental Status Examination allows

11  the organization, completion and communication of these observations." Paula T. Trzepacz and

12  Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993).

13  "Like the physical examination, the Mental Status Examination is termed the *objective* portion of

14  the patient evaluation." Id. at 4 (emphasis in original).

15        The Mental Status Examination generally is conducted by medical professionals skilled

16  and experienced in psychology and mental health. Although "anyone can have a conversation

17  with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's

18  'conversation' to a 'mental status examination.'" Trzepacz, supra, The Psychiatric Mental Status

19  Examination 3. A mental health professional is trained to observe patients for signs of their

20  mental health not rendered obvious by the patient's subjective reports, in part because the patient's

21  self-reported history is "biased by their understanding, experiences, intellect and personality" (id.

22  at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be

23

24

1    unaware that her "condition reflects a potentially serious mental illness." Van Nguyen v. Chater,

2    100 F.3d 1462, 1465 (9th Cir. 1996).

3            Here, examining psychiatrist, Dr. Woyna, indicated her specific opinions based on her

4    observations and plaintiff's performance during a mental status examination. However, the ALJ

5    gave his own interpretations of plaintiff's examination results, concluding that plaintiff could

6    "perform some complex tasks," and could "respond appropriately to supervisors and coworkers" (Tr.

7    21).

8            When an ALJ seeks to discredit a medical opinion, he must explain why his own

9    interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725; see

10   also Blankenship, supra, 874 F.2d at 1121 ("When mental illness is the basis of a disability claim,

11   clinical and laboratory data may consist of the diagnosis and observations of professional trained

12   in the field of psychopathology. The report of a psychiatrist should not be rejected simply

13   because of the relative imprecision of the psychiatric methodology or the absence of substantial

14   documentation") (quoting Poulin v. Bowen, 817 F.2d 865, 873074 (D.C. Cir. 1987)).

15           The Court concludes that the ALJ did not explain adequately why his own interpretations,

16   rather than those of Dr. Woyna, were correct. See Reddick, supra, 157 F.3d at 725. For this

17   reason and because the ALJ failed to provide specific and legitimate reasons supported by

18   substantial evidence in the record as a whole to discount the opinions of psychiatrist, Dr. Woyna,

19   the Court concludes that the ALJ failed to evaluate properly the medical evidence regarding

20   plaintiff's mental impairments. The Court already has concluded that the ALJ failed to evaluate

21   properly the medical opinion of Dr. Savoldi, see supra, section 1.a, and therefore failed to assess

22   properly plaintiff's physical limitations. The ALJ's failure to assess properly the medical opinion

23   of Dr. Woyna regarding plaintiff's mental impairments provides an independent reason to set

24

1    aside the decision by the ALJ and to reverse and remand this matter to the Commissioner for

2    further consideration.

3        2.    The Administrative Law Judge assigned to this matter following remand should

4              assess anew plaintiff's credibility.

5        When making findings regarding a claimant's credibility and determining the extent to

6    which symptoms affect a claimant's capacity to perform basic work activities, an Administrative

7    Law Judge should consider the objective medical evidence. See 20 C.F.R. § 404.1529(c)(4); see

8    also 20 C.F.R. § 404.1529(c)(2). The Court already has determined that the ALJ in this matter

9    failed to evaluate properly the medical evidence regarding plaintiff's physical and mental

10   impairments and functional limitations, see supra, section 1. In addition, the Administrative Law

11   Judge assigned to this matter following remand may assess differently plaintiff's credibility

12   following a proper evaluation of the medical evidence.

13       The Court also observes that the ALJ committed at least one legal error in his evaluation

14   of plaintiff's credibility. Regarding activities of daily living, the Ninth Circuit "has repeatedly

15   asserted that the mere fact that a plaintiff has carried on certain daily activities  .  .  .  .  does not

16   in any way detract from her credibility as to her overall disability." Orn v. Astrue, 495 F.3d 625,

17   639 (9th Cir. 2007 (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth

18   Circuit specified "the two grounds for using daily activities to form the basis of an adverse

19   credibility determination:" (1) whether or not they contradict the claimant's other testimony and

20   (2) whether or not the activities of daily living meet "the threshold for transferable work skills."

21   Orn, 495 F.3d at 639 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). As stated by the

22   Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their

23   transferability to conclude that a claimant's daily activities warrant an adverse credibility

24

determination. Orn, supra, 495 F.3d at 639 (*quoting* Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)).

In this matter, the ALJ relied in part on plaintiff's "range of activities" in deciding not to credit fully her allegations regarding her symptoms and functional limitations (see Tr. 20). The ALJ cited plaintiff's travels to other cities and her love of parks, the outdoors, nature and walking the dog (Tr. 20-21). The ALJ also cited in this context that plaintiff "was redoing the interior of her home, and had restarted some craft hobbies" (Tr. 21). However, the ALJ failed to make specific findings regarding transferability before concluding that her daily activities warranted an adverse credibility finding (see Tr. 20-21). See also Orn, supra, 495 F.3d at 639. This was legal error, especially given the fact that plaintiff testified that she experienced difficulties and pain while traveling (see Tr. 41, 49). See also Orn, supra, 495 F.3d at 639.

For these reasons and based on the relevant record, the Court concludes that the Administrative Law Judge assigned to this matter following remand should assess anew plaintiff's credibility.

3. The Administrative Law Judge assigned to this matter following remand should assess anew the evidence provided by other sources, including that provided by Ms. Fran Corn, M.S.W and other lay witnesses.

The Court already has determined that the ALJ in this matter failed to evaluate properly the medical evidence regarding plaintiff's impairments and her functional limitations, see supra, section 1, and that he committed legal error in his evaluation of plaintiff's credibility, see supra, section 2. In addition, the Administrative Law Judge assigned to this matter following remand may assess differently the lay statements following a proper evaluation of the medical evidence as well as a proper review of plaintiff's credibility. For these reasons and based on the relevant

ORDER ON PLAINTIFF'S COMPLAINT - 13

1    record, the Court concludes that the Administrative Law Judge assigned to this matter following

2    remand should assess anew the statements provided by lay sources.

3           4.   This matter should be reversed and remanded for a new hearing.

4           The Ninth Circuit has put forth a "test for determining when evidence should be

5    credited and an immediate award of benefits directed." Harman v. Apfel, 211 F.3d 1172,

6    1178, 2000 U.S. App. LEXIS 38646 at **17 (9th Cir. 2000). It is appropriate where:

7           (1) the ALJ has failed to provide legally sufficient reasons for rejecting
            such evidence, (2) there are no outstanding issues that must be resolved
8           before a determination of disability can be made, and (3) it is clear from
            the record that the ALJ would be required to find the claimant disabled
9           were such evidence credited.

10   Harman, 211 F.3d at 1178 (quoting Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir.1996)).

11          Here, outstanding issues must be resolved. See Smolen, 80 F.3d at 1292. There is a large

12   volume of medical and other evidence, and much in the record is contradicted.

13          The ALJ is responsible for determining credibility and resolving ambiguities and

14   conflicts in the medical evidence.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998);

15   Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is

16   not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility

17   lies with the ALJ.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1999) (quoting Waters v.

18   Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (citing Calhoun v. Bailar, 626 F.2d 145, 150 (9th

19   Cir. 1980))).

20          Therefore, remand is appropriate to allow the Commissioner the opportunity to consider

21   properly all of the medical evidence as a whole and to incorporate the properly considered

22   medical evidence into the consideration of plaintiff's credibility and the evidence provided by lay

23   sources. See Sample, 694 F.2d at 642.

24

ORDER ON PLAINTIFF'S COMPLAINT - 14

1                                    <u>CONCLUSION</u>

2          Based on the reasons set forth above and the relevant record, the Court **ORDERS** that

3   this matter be **REVERSED** and **REMANDED** to the administration for further consideration

4   pursuant to sentence four of 42 U.S.C. § 405(g).

5          **JUDGMENT** should be for plaintiff and the case should be closed.

6          Dated this 10th day of November, 2011.

7

8                                            J. Richard Creatura
                                             United States Magistrate Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 15